UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MARIA GUADALUPE ZAVALA, | CASE NO. CV 19-0999 AS |
|---|---|
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| ANDREW M. SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

For the reasons discussed below, IT IS HEREBY ORDERED that, pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's decision is affirmed.

**PROCEEDINGS**

On February 11, 2019, Maria Guadalupe Zavala ("Plaintiff") filed a Complaint seeking review of the denial of her application

---

[1] Andrew M. Saul, Commissioner of Social Security, is substituted for his predecessor. See 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

for disability benefits by the Commissioner of Social Security ("Commissioner" or "Agency"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 9, 16, 18). On June 26, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 13, 14). The parties filed a Joint Stipulation ("Joint Stip.") on December 17, 2019, setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 26).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE RECORD**

On August 12, 2015, Plaintiff filed an application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act (the "Act"), alleging a disability onset date of June 15, 2013. (AR 181-82). The Commissioner denied Plaintiff's application initially and on reconsideration. (AR 92-114). On October 10, 2017, Plaintiff, represented by counsel and assisted by a Spanish language interpreter, testified at a hearing before Administrative Law Judge Henry Koltys (the "ALJ"). (AR 37-91). The ALJ also heard testimony from Abbe May, Psy.D., an impartial vocational expert ("VE"), and Plaintiff's husband. (AR 65-79, 82-89; see id. 279-80).

On January 31, 2018, the ALJ denied Plaintiff's request for benefits. (AR 20-32). Applying the five-step sequential process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since June 15, 2013, the alleged onset date. (AR 22). At step two, the ALJ found that Plaintiff's

bilateral carpal tunnel syndrome and a history of bilateral carpal tunnel releases are severe impairments.[2] (AR 22). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.[3] (AR 24).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and concluded that she has the capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b),[5] except she is "limited to occasional handling and fingering bilaterally." (AR 24). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 30). Based on Plaintiff's RFC, age,

---

[2] The ALJ found that Plaintiff's depressive disorder did not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and is therefore nonsevere. (AR 23-24).

[3] Specifically, the ALJ considered whether Plaintiff meets the criteria of Listing 11.14 (peripheral neuropathy) and concluded that she does not. (AR 24).

[4] A Residual Functional Capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

education, work experience, and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can have performed, including counter clerk, storage facility clerk, and rental clerk. (AR 30-32; see id. 26). Accordingly, the ALJ found that Plaintiff has not been under a disability as defined in the Act from June 15, 2013, the alleged onset date, through the date of his decision. (AR 32).

The Appeals Council denied Plaintiff's request for review on December 19, 2018. (AR 1-8). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

**STANDARD OF REVIEW**

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F. 3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that

4

supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (inferences "reasonably drawn from the record" can constitute substantial evidence).

This Court "may not affirm [the Commissioner's] decision simply by isolating a specific quantum of support evidence, but must also consider evidence that detracts from [the Commissioner's] conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987) (citation omitted). However, the Court cannot disturb findings supported by substantial evidence, even though there may exist other evidence supporting Plaintiff's claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, [a] court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d 715, 720-21 (9th Cir. 1998) (citation omitted).

**DISCUSSION**

Plaintiff contends that the ALJ does not support his adverse credibility determination with substantial evidence. (Joint Stip. at 2-8). Defendant asserts that the ALJ properly considered Plaintiff's subjective complaints. (Id. at 9-15).

**A.   Legal Standard**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

"This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

Where, as here, the ALJ finds that a claimant suffers from a medically determinable physical or mental impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate "the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[6] SSR 16-3p superseded SSR 96-7p and eliminated the term "credibility" from the Agency's sub-regulatory policy. However, the Ninth Circuit has noted that SSR 16-3p

> makes clear what [the Ninth Circuit's] precedent already required: that assessments of an individual's testimony by an ALJ are designed to "evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those

---

[6] SSR 16-3p, which superseded SSR 96-7p, is applicable to this case, because SSR 16-3p, which became effective on March 28, 2016, was in effect at the time of the Appeal Council's December 19, 2018 denial of Plaintiff's request for review. Nevertheless, the regulations on evaluating a claimant's symptoms, including pain, see 20 C.F.R. §§ 404.1529 and 416.929, have not changed.

7

symptoms, and not to delve into wide-ranging scrutiny of
the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 679 n.5 (quoting SSR 16-3p) (alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

### B. Plaintiff's Subjective Statements

Plaintiff asserts disability due to migraines, neck and shoulder pain, severe back pain, knee injury, high cholesterol, memory problems, depression, cyst on right hand, and bilateral carpal tunnel syndrome. (AR 198). In September 2015, she submitted an adult function report. (AR 238-46). Plaintiff asserted she is unable to work due to carpal tunnel on both hands, back, shoulders and neck pain, and migraine headaches. (AR 238). She asserted difficulty with personal care: pain interferes with her ability to dress, bathe, and feed herself. (AR 239). Nevertheless, she can prepare her own meals and perform some housework. (AR 240). Plaintiff is able to drive and ride in a car, shop in stores, and

goes to church and movies with her family. (AR 241-42). Plaintiff can walk 200 yards before needing to rest for 10 to 20 minutes. (AR 243).

At Plaintiff's October 2017 hearing, she testified that she cannot work due to pain in her hands, legs, knees, stomach, and neck radiating down to her hands. (AR 45-47). She has difficulty lifting, holding, and picking up objects. (AR 45). The pain makes it difficult for Plaintiff to perform household chores, including mopping, vacuuming, sweeping, and washing dishes. (AR 45-46). Her medications reduce the pain from 8/10 to 4-5/10. (AR 53-55). Plaintiff also suffers with chronic headaches and memory impairment. (AR 48-49). Her headache medication reduces the pain to 2/10. (AR 55). She experiences dizziness and drowsiness from her medications. (AR 60-61).

Plaintiff can stand or walk for only 20 minutes before needing to sit down. (AR 46-47). She can sit for four hours, walk for one to two hours, and stand for one hour in an eight-hour workday. (AR 53). She can lift only five to ten pounds. (AR 47). Plaintiff's husband and her two daughters, ages 19 and 12, help with household chores. (AR 49-50, 61-62). Plaintiff is home alone during the day while her husband and older daughter is working and the younger daughter is in school. (AR 51). She is able to pay bills, make simple meals, wash dishes, do laundry, clean the house, bathe herself, exercise daily, and walk two to three times a week. (AR 61-64). She drives daily, delivering lunch to her husband at work and taking her daughter to school. (AR 63).

**C.      Plaintiff's Husband's Subjective Statements**

In September 2015, Joaquin Zavala, Plaintiff's husband, submitted a third-party function report. (AR 210-17). He asserted that Plaintiff is in pain most of the time, causing her difficulty with walking, standing, and sitting for extended periods. (AR 210). During the day, Plaintiff takes their daughter to school, prepares her own meals, and performs household chores. (AR 211-12). She is able to drive and ride in a car and goes to church and to movies weekly. (AR 213-14). Plaintiff can walk 200 yards before needing to rest. (AR 215).

At the October 2017 hearing, Plaintiff's husband testified that Plaintiff is alone during the day while he works as a mail carrier. (AR 82-83). Plaintiff is able to pay bills, grocery shop, cook, clean, and do the laundry, but her family also participates with these chores. (AR 83-84). Plaintiff drives daily, bringing lunch to her husband and occasionally taking or picking up her daughter from school or work. (AR 84-86). Plaintiff's husband stated that Plaintiff exercises daily and goes for a walk three to five times weekly. (AR 87).

**D.      The ALJ's Credibility Findings**

The ALJ found that Plaintiff's testimony

> was not supported by the medical evidence to the extent
> [she] alleged [she] could not perform any work activity.

11

> That allegation was undermined by the medical evidence that showed good postoperative recovery following a history of bilateral carpal tunnel releases. The medical sources also did not assess functional limitations that would preclude all work activity. [Plaintiff's] description of her functional capacity appeared exaggerated in light of the medical evidence and her acknowledgment throughout the record regarding her daily activities. . . . The allegation of disability was further damage[d] by [Plaintiff's] admission that she received unemployment benefits after the alleged onset date. In order to receive unemployment benefits she had to certify that she was ready, willing, and able to work.

(AR 25-26, 30).

**E.    Analysis**

As set forth below, the ALJ provided clear and convincing reasons for discrediting Plaintiff's testimony about the intensity, persistence and limiting effects of her pain and symptoms.

First, Plaintiff's allegations "appear exaggerated in light of . . . her acknowledgment throughout the record regarding her daily activities." (AR 26; see id. 30). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will

often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016. Here, Plaintiff asserted that headaches, memory impairment, and pain in her hands, neck, knees, and legs significantly limit her ability to lift, carry, sit, stand, and walk. (AR 45-64, 198, 238-46). Nevertheless, Plaintiff acknowledged being able to pay bills, make simple meals, wash dishes, do laundry, clean the house, bathe herself, exercise daily, and walk two to three times a week. (AR 61-64; 240). She manages being home alone during the day while her husband and older daughter are working and her younger daughter is in school. (AR 51). She is able to drive and ride in a car, shop in stores, and attend church and movies with her family on a weekly basis. (AR 241-42). On a daily basis, Plaintiff delivers lunch to her husband at work and takes her daughter to school. (AR 63). These acknowledged activities of daily living "are entirely inconsistent with [Plaintiff's] allegation of disability." (AR 30); see Ghanim, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

Plaintiff argues that she is "not alleging an inability to do all work activity." (Joint Stip. at 7). Instead, she contends she is "alleging a limitation to sedentary work, which would result

13

in benefits under the grid rules as of her 50th birthday." (Id.). But Plaintiff did not raise this argument at her hearing or in her adult function report. Further, she asserts being able to sit for only four hours in an eight-hour workday (AR 47), which is incompatible with sedentary work. See SSR 83-10, at *5 ("Since being on one's feet is required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."). In any event, Plaintiff's acknowledged activities of daily living, including driving, performing household chores, attending movies, and shopping in stores are inconsistent with her testimony that she is not capable of even sedentary work.

Second, the ALJ found that Plaintiff's "allegation of disability was undermined by the mild physical findings throughout the record." (AR 30; see id. 25-29). Inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony. Nevertheless, inconsistencies are factors that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities"); Carmickle, 533 F.3d at 1161 ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). While Plaintiff has a history of

bilateral carpal tunnel releases and left knee surgery, she recovered postoperatively without significant functional limitations. In July 2013, Plaintiff's workers compensation physician precluded her from gripping, grasping, pushing, and pulling with her right hand. (AR 417). By February 2014, the physician concluded that Plaintiff should avoid prolonged walking, squatting, kneeling, ascending and descending stairs, working at unprotected heights, and walking on uneven terrain. (AR 323). However, by May 2014, the doctor opined that Plaintiff was precluded only from very forceful activities and fine manipulation with her hands. (AR 827). In August 2014, Plaintiff's hand surgeon opined that Plaintiff is precluded from repetitive or forceful use of her hands. (AR 926). From July 2013 through April 2014, Keith Richards, M.D., repeatedly found Plaintiff's knees stable with good range of motion and concluded that she could perform her past work as a school bus driver at full duty status. (AR 340-47, 388-89, 393-95, 400, 403-04, 420). From November 2013 through March 2017, physical examinations performed at Kaiser Permanente were all within normal limits. (AR 1461-62, 1510, 1537, 1588, 1598, 1604, 1621, 1662, 1673, 1681, 1693, 1709, 1772-73, 1810, 1862-63, 1921, 2120-25, 2361, 2397-98, 2411, 2577, 2592-93, 2613, 2626, 2653, 2667, 2680). In July through October 2013, the Kaiser medical records indicate normal mental status examinations. (AR 1335-430). In July 2014, the records indicate that Plaintiff had been successfully treated at a pain management program and that her pain was controlled with medication management. (AR 1614-15). These medical records are consistent with the ALJ's determination that Plaintiff can perform a limited range of light work. (AR 24).

1 | Plaintiff does not dispute this medical evidence. Instead, she cites her five surgeries and the degenerative changes indicated by x-rays and MRIs. (Joint Stip. at 7-8). However, these diagnostic studies did not include any acute findings. In January 2013, an MRI indicated <u>mild</u> multilevel degenerative changes of the cervical spine, most conspicuous at C5-C6. (AR 1156-57). After Plaintiff's knee surgery, a postoperative diagnosis included loose bodies in the knee, meniscus tear, and patella damage. (AR 500-01). In December 2016, x-rays of Plaintiff's hands found <u>mild</u> spine in multiple distal interphalangeal joints consistent with <u>mild</u> degenerative change. (AR 2501). Further, "[t]he mere existence of an impairment is insufficient proof of a disability." <u>Matthews v. Shalala</u>, 10 F.3d 678, 680 (9th Cir. 1993); <u>see</u> <u>Key v. Heckler</u>, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."); <u>accord</u> <u>Lundell v. Colvin</u>, 553 F. App'x 681, 684 (9th Cir. 2014). Even if a claimant receives a particular diagnosis, it does not necessarily follow that the claimant is disabled, because it is the claimant's symptoms and true limitations that generally determine whether she is disabled. <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001); <u>Gentle v. Barnhart</u>, 430 F.3d 865, 868 (7th Cir. 2005) ("Conditions must not be confused with disabilities. The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment."). While Plaintiff may interpret the medical record differently, "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." <u>Burch v. Barnhart</u>, 400 F.3d

676, 679 (9th Cir. 2005). As the Court cannot conclude that the ALJ's interpretation of the medical record was irrational, the ALJ's decision must be upheld.

Third, the ALJ noted that Plaintiff "received unemployment benefits after the alleged onset date." (Dkt. No. 30). The receipt of unemployment benefits sometimes can undermine a claimant's alleged inability to work full time. See Copeland v. Bowen, 861 F.2d 536, 542 (9th Cir. 1988) (upholding ALJ's rejection of claimant's credibility where claimant had accepted unemployment insurance benefits "apparently considering himself capable of work and holding himself out as available for work"); see also Fennell v. Berryhill, 721 F. App'x 652, 655 (9th Cir. 2018) (ALJ properly discredited claimant's testimony where she held herself out as available for full-time work when receiving unemployment benefits during the adjudicatory period); Bray v. Commissioner of Social Security Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (fact that a claimant has sought out employment weighs against a finding of disability); see also Ghanim v. Colvin, 763 F.3d 1154, 1165 (9th Cir. 2014) ("continued receipt" of unemployment benefits can cast doubt on a claim of disability); but see Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005) ("That Webb sought employment suggests no more than that he was doing his utmost, in spite of his health, to support himself."). In California, however, an individual available for only part-time work is not disqualified from unemployment compensation eligibility. See Cal. Unemp. Ins. Code § 1253.8; compare 20 C.F.R. § 404.1545(b) (claimant under the Social Security Act is assessed for capacity to work "on a regular

17

and continuing basis"); SSR 96-8p, at *2 (defining "regular and continuing basis" as "8 hours a day, for 5 days a week, or an equivalent work schedule"). The record does not establish whether Plaintiff held herself out as available for full-time or part-time work. Indeed, Plaintiff testified that she did not look for any work because she could not work. (AR 50-51). And the record does not contain Plaintiff's application for unemployment compensation. Accordingly, the Court finds that Plaintiff's receipt of unemployment compensation does not give rise to a legally sufficient reason to reject Plaintiff's allegations. See Carmickle v. Commissioner, 533 F.3d at 1161-62 (9th Cir. 2008) (finding ALJ's adverse credibility finding not supported by substantial evidence where record failed to establish whether the claimant held himself out as available for full-time or part-time work; observing that only the former is inconsistent with disability allegations); Lind v. Colvin, 2015 WL 1863313, at *3-4 (C.D. Cal. Apr. 23, 2015) (record evidence of unemployment compensation inadequate to support ALJ's adverse credibility determination where record did not contain the claimant's unemployment benefits application, and did not specify whether the claimant had certified he was available for full-or part-time work). Nevertheless, any error in using the receipt of unemployment benefits to undermine Plaintiff's credibility is harmless because the other bases adequately support the ALJ's credibility determination, as discussed above. See Farr v. Berryhill, 706 F. App'x 363, 364 (9th Cir. 2017) ("Any error in the ALJ's [use of unemployment benefits] for undermining Farr's credibility was harmless because three other bases for discounting Farr's testimony adequately support the ALJ's credibility

determination, and each finds ample support in the record."); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (concluding that, even if the record did not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error was harmless).

Finally, the ALJ did not completely reject Plaintiff's testimony. (AR 29). Indeed, the ALJ gave less than full weight to the State agency physicians' assessments because they did not have the benefit of Plaintiff's testimony at the hearing. (AR 29). While the ALJ found that the State agency physicians' "limitation to medium work with the fine manipulative limitations was generally consistent with the record," the ALJ limited Plaintiff "to light work, which views the evidence in the light most favorable to [Plaintiff]." (AR 29). Based partially on Plaintiff's subjective statements, the ALJ found that Plaintiff is capable of light work except she is further limited to only occasional handling and fingering bilaterally. (AR 24). While these limitations preclude Plaintiff from performing any past relevant work, the ALJ found that there are still jobs in the national economy that Plaintiff can perform. (AR 30-32; see id. 65-79).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings. Accordingly, because substantial evidence supports the ALJ's assessment of Plaintiff's credibility, no remand is required.

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 6, 2020.

                              /s/
                         ALKA SAGAR
                 UNITED STATES MAGISTRATE JUDGE